**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **ERVIN ALLEN AND ANDREA ALLEN,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, Inc., TRANS UNION LLC, and ALLY FINANCIAL INC.,**<br><br>**Defendants.** | **Civil Action No. 2:26-cv-12506**<br><br>**With Jury Demand Endorsed** |

# **COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Ervin Allen and Andrea Allen ("Plaintiffs"), by and through counsel, for Plaintiffs' Complaint against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Ally Financial Inc., jointly, severally, and in solido, state as follows:

## **I. INTRODUCTION**

1. Three of the Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and the other Defendant, Ally Financial Inc., is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2. Plaintiffs are natural persons residing in Detroit, Michigan and are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and are victims of repeated false credit reporting.

**Made Defendants herein are**:

3. Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4. Upon information and belief, Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants,", does business in this judicial district and is an Ohio corporation with its principal place of business in California. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5. Upon information and belief, Defendant Trans Union LLC, which may also

hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6. Upon information and belief, Defendant Ally Financial Inc., which may also hereinafter be referred to as "Ally," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Michigan corporation that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, Ally Detroit Center, 500 Woodward Ave., Detroit, MI 48226. Ally is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies..

7. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs

specifically include, but are not limited to, Equifax, Experian, and Trans Union.

## III. JURISDICTION AND VENUE

8. Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arising under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9. Venue is proper in this District, because Plaintiffs reside in this judicial district, the credit reporting at issue is associated to account numbers assigned to either property or the consumer who are located in this judicial district. CRA Defendant and Furnisher Defendant transact business in this District, and a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Eastern District of Michigan as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because the CRA Defendants entered into agreements with Furnisher Defendant in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' disputes sent from the CRA Defendants as part of Defendants' reinvestigations were submitted to Furnisher Defendant's headquarters and investigated by Furnisher Defendant using its resources located at or closely connected to this judicial district. Furnisher Defendant managed Plaintiffs' account(s) from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

11. In or around June 2016, Plaintiffs secured an auto loan with Ally Financial and Ally Financial assigned account number 673923***** (hereinafter the "Ally Financial loan" or "Ally Financial account" or "Ally Financial tradeline").

12. Plaintiffs have been timely on loan payments to the Ally account since the loan was taken out in June 2016.

13. Due to unforeseen circumstances, Plaintiffs needed to file for bankruptcy protection under Chapter 13 of Title 11.

14. On or around February 4, 2020, Plaintiffs filed for bankruptcy protection under Chapter 13 of Title 11.

15. A redacted copy of Plaintiffs' chapter 13 bankruptcy docket report for Plaintiffs' bankruptcy case is attached hereto as Exhibit "A."

16. As part of Plaintiffs' chapter 13 bankruptcy, it was determined that Plaintiffs were to continue to pay on the Ally loan even after Plaintiff filed for bankruptcy.

17. The Chapter 13 Plan specifically details that Plaintiffs were to make these payments to the Bankruptcy Trustee, and the Trustee would disperse the payments to Ally.

18. A redacted copy of Plaintiffs' chapter 13 bankruptcy Plan is attached hereto as Exhibit "B."

19. During Plaintiffs' bankruptcy, Plaintiffs completed the loan payments for the Ally account, and Plaintiffs are the free and clear owners of the automobile that was the security interest of the Ally account.

20. On August 12, 2025, the Plaintiffs were discharged from Chapter 13 Bankruptcy.

21. A redacted copy of Plaintiffs' chapter 13 Discharge Order is attached hereto as Exhibit "C."

22. Throughout Plaintiffs' chapter 13 bankruptcy, under direct or indirect order from the bankruptcy, timely monthly payments were made to the Ally account.

23. Plaintiffs have the title to the automobile that was the security interest of the Ally account.

24. Ally, or the debt collection agency acting for Ally, sent Plaintiff a lien waiver once all the loan payments for the Ally account were received.

25. Sometime in December 2025, Plaintiffs obtained Plaintiffs' three-bureau credit reports and noticed that the Equifax, Experian, and Trans Union credit reports were not accurate.

26. Redacted copies of Plaintiffs' December 2025 tri-merge credit reports are attached hereto as Exhibit "D" and "E" respectively.

27. Within the Tri-Merge credit reports, Plaintiffs noticed that Equifax reported several inaccuracies for Plaintiffs' Ally account.

28. The Ally account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of December 1, 2019, a date of last activity of December 1, 2019, a high balance of $0.00, and within the creditor remarks it was reporting the "Account involved in Chapter 13".

29. This reporting is incorrect because Plaintiffs completed the required payments for the Ally account, Plaintiffs were the free and clear owners of the automobile that was the security interest of the Ally account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

30. The accurate reporting of the Ally account would have been to report a payment

status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, a high balance of $20,957, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

31. The current reporting of the Ally account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

32. The current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

33. Within the Tri-Merge credit report, Plaintiff Andrea Allen noticed that Experian reported several inaccuracies for her Ally account.

34. The Ally account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last activity of February 1, 2020, nothing for a date of last payment, and within the creditor remarks it was reporting the "Debt Included in or discharged through Bankruptcy Chapter 13".

35. This reporting is incorrect because Plaintiffs completed the required payments for the Ally account, Plaintiffs were the free and clear owners of the automobile that was the security interest of the Ally account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

36. The accurate reporting of the Ally account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

37. The current reporting of the Ally account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

38. The current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

39. Within the Tri-Merge credit reports, Plaintiffs noticed that Trans Union reported several inaccuracies for Plaintiffs' Ally account.

40. This Ally account was reporting an account rating of "Derogatory", a date of last activity of September 5, 2025, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

41. This reporting is incorrect because Plaintiffs completed the required payments for the Ally account, Plaintiffs were the free and clear owners of the automobile that was the security interest of the Ally account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

42. The accurate reporting of the Ally account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

43. The current reporting of the Ally account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

44. The current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

45. In or around January 2026, Plaintiffs sent direct disputes to the CRA Defendants and requested that the CRAs investigate the reporting of the Ally account, and Plaintiffs specifically addressed the above referenced issues with the reporting stated in the above Paragraphs. Plaintiffs requested that under the FCRA, the CRAs conduct reasonable investigations and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Ally account(s).

46. Redacted copies of Plaintiffs' unsigned dispute letters sent to CRAs are attached hereto as Exhibits "F", "G", "H", "I", and "J" respectively.

47. Equifax failed to respond to Plaintiffs' disputes, so Plaintiffs requested updated consumer reports to see if any changes were made on Plaintiffs' Consumer Reports.

48. Redacted copies of Plaintiffs' updated tri-merge credit reports are attached as Exhibit "K" and "L" respectively.

49. Plaintiffs' updated tri-merge credit reports showed that Equifax made none of the substantive changes Plaintiffs requested in the direct disputes to Equifax, and the Ally account continued to report inaccurately.

50. For Plaintiff Ervin Allen, the Ally account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of December 1, 2019, a date of last activity of December 1, 2019, a high balance of $0.00, and within the creditor remarks it was reporting the Ally account "Included in Chapter 13".

51. For Plaintiff Andrea Allen, the Ally account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", the last payment date was updated to

June 1, 2020, a date of last activity was updated to June 1, 2020, a high balance of $0.00, and within the creditor remarks it was reporting the "Account involved in Chapter 13".

52. Equifax's response, or lack thereof, was not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Ally account and gave no explanation as to why the Ally account was still reporting inaccurately.

53. Plaintiffs' inaccurate Equifax consumer reports were disseminated to third parties before and/or after the instant dispute.

54. The current reporting of the Ally account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

55. Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Ally account.

56. Upon the Plaintiffs' requests to Equifax for verification and correction regarding the Ally account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to verify the reporting of the Ally account substantially or reasonably.

57. Equifax has adopted the Metro 2 reporting standard, Equifax deviated from the standard based on its conduct in this case, and by Equifax deviating from the adopted standard, Equifax injured Plaintiffs' credit standing.

58. In the alternative, Equifax failed to contact Furnisher Defendant, therefore, failed to perform any investigation at all.

59. In the alternative to the allegation that Equifax failed to contact Furnisher Defendant, it is alleged that Equifax did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

60. Furnisher Defendant knows how to report the Ally account accurately, and their response to the CRA was willfully reckless.

61. Furnisher Defendant knows the current reporting of the Ally account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

62. Furnisher Defendant knows the current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

63. Experian failed to respond to Plaintiff Andrea Allen's dispute, so she requested an updated consumer report to see if any changes were made on her Consumer Report.

64. A redacted copy of Plaintiff Andrea Allen's updated tri-merge credit report is attached as Exhibit "L."

65. Plaintiff Andrea Allen's updated tri-merge credit report showed that Experian made none of the substantive changes she requested in the direct dispute to Experian, and the Ally account continued to report inaccurately.

66. The Ally account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", nothing for a date of last payment, a date of last activity of February 1, 2020, and within the creditor remarks it was reporting the "Debt included in or discharged through Bankruptcy Chapter 13".

67. Experian's response, or lack thereof, was not the result of a reasonable

investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Ally account and gave no explanation as to why the Ally account was still reporting inaccurately.

68. Plaintiff Andrea Allen's inaccurate Experian consumer report was disseminated to third parties before and/or after the instant dispute.

69. The current reporting of the Ally account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

70. Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Ally account.

71. Upon the Plaintiff Andrea Allen's request to Experian for verification and correction regarding the Ally account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to verify the reporting of the Ally account substantially or reasonably.

72. Experian has adopted the Metro 2 reporting standard, Experian deviated from the standard based on its conduct in this case, and by Experian deviating from the adopted standard, Experian injured Plaintiffs' credit standing.

73. In the alternative, Experian failed to contact Furnisher Defendant, therefore, failed to perform any investigation at all.

74. In the alternative to the allegation that Experian failed to contact Furnisher Defendant, it is alleged that Experian did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

75. Furnisher Defendant knows how to report the Ally account accurately, and their response to the CRA was willfully reckless.

76. Furnisher Defendant knows the current reporting of the Ally account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

77. Furnisher Defendant knows the current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

78. Trans Union failed to respond to Plaintiffs' disputes, so Plaintiffs requested updated consumer reports to see if any changes were made on Plaintiffs' Consumer Reports.

79. Redacted copies of Plaintiffs' updated tri-merge credit reports are attached as Exhibit "K" and "L" respectively.

80. Plaintiffs' updated tri-merge credit reports showed that Trans Union made none of the substantive changes Plaintiffs requested in the direct disputes to Trans Union, failed to update the Ally account, and Trans Union continued to report the Ally account inaccurately for Plaintiff Ervin Allen and deleted Plaintiff Andrea Allen's Ally account without explanation or reasons for an outright deletion.

81. For Plaintiff Ervin Allen, the Ally account continued to report an account rating of "Derogatory", a date of last activity of September 5, 2025, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

82. Trans Union's response, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes, and Trans Union failed to remedy the inaccuracies within the Ally account.

83. Trans Union's response gave no explanation as to why it failed to sufficiently update and/or modify the Ally account when Plaintiffs demonstrated they were secured debts and they were successfully discharged from bankruptcy.

84. Plaintiffs' inaccurate Trans Union consumer reports were disseminated to third parties before and/or after the instant dispute.

85. The current reporting of the Ally account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

86. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Ally account.

87. Upon the Plaintiff Ervin Allen's request to Trans Union for verification and correction regarding the Ally account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to verify the reporting of the Ally account substantially or reasonably.

88. Experian has adopted the Metro 2 reporting standard, Experian deviated from the standard based on its conduct in this case, and by Experian deviating from the adopted standard, Experian injured Plaintiffs' credit standing.

89. Additionally, upon the Plaintiff Andrea Allen's request to Trans Union to verify and correct the Ally account, and in accordance with Trans Union's standard procedures, as well as the FCRA, because Trans Union ignored the evidence Plaintiff Andrea Allen included with her dispute letter and unilaterally deleted the Ally account from her Trans Union Consumer

Report.

90. Trans Union seemingly saw the word "Bankruptcy" in Plaintiff Andrea Allen's dispute letter and unilaterally decided to delete the Ally account and not even attempt to contact the furnisher of credit information.

91. Trans Union simply ignored Plaintiff Andrea Allen's request to involve her lender, did not evaluate or consider whether Plaintiffs earned a discharge and lazily deleted the account without any explanation.

92. Trans Union's willful failure to involve Ally in Plaintiff's FCRA dispute is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Trans Union to promptly notify Ally, of the dispute and provide all relevant information it received from Plaintiff for Ally to investigate.

93. Trans Union willfully decided to keep Plaintiff's disputes to themselves and deleted the Ally without perform any investigation at all.

94. Trans Union's failure to investigate Plaintiff Andrea Allen's dispute letter, its failure to include Ally in the dispute process, and its willful actions have injured Plaintiff Andrea Allen's credit standing.

95. Trans Union has adopted the Metro 2 reporting standard, Trans Union deviated from the standard based on its conduct in this case, and by Trans Union deviating from the adopted standard, Trans Union injured Plaintiffs' credit standing.

96. In the alternative to the allegation that Trans Union failed to contact Furnisher Defendant, it is alleged that Trans Union did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

97. Furnisher Defendant knows how to report the Ally account accurately, and their

response to the CRA was willfully reckless.

98. Furnisher Defendant knows the current reporting of the Ally account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

99. Furnisher Defendant knows the current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

## V. GROUNDS FOR RELIEF

### EQUIFAX'S VIOLATION OF THE FCRA (15 U.S.C. §1681e(b))

100. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

101. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

102. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

103. Equifax knew or should have known of Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

104. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is

not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

105. After Equifax knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for Plaintiffs' Ally tradeline, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

106. As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs' spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs

in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

107. Equifax's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

108. The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EQUIFAX'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

109. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

110. Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

111. As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and

annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs' spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

112. Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

113. The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

114. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

115. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

116. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

117. Experian knew or should have known of Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Experian continued to prepare a patently false consumer report concerning Plaintiffs.

118. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

119. After Experian knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for Plaintiffs' Ally tradeline, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

120. As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered

damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs' spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

121. Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiffs to

recover under 15 U.S.C. § 1681o.

122. The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

123. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

124. Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

125. As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates

Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs' spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

126. Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

127. The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

128. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

129. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit

reports and credit files it published and maintained concerning the Plaintiffs.

130. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

131. Trans Union knew or should have known of Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Trans Union continued to prepare a patently false consumer report concerning Plaintiffs.

132. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

133. After Trans Union knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for Plaintiffs' Ally tradeline, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

134. As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit

offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs' spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

135. Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

136. The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

137. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

138. Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

139. As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs' spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs

in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

140. Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

141. The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**ALLY'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

142. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

143. Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

144. Furnisher Defendant further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Ally Tradeline(s) within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' disputes of the Ally Tradeline(s), failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting

agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Ally Tradeline(s) within the consumer reporting agencies reports.

145. As a result of Furnisher Defendant's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying

to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

146. Furnisher Defendant's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

147. Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondent superior and/or vicarious liability.

## VII. DAMAGES

148. Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Michigan.

149. Plaintiffs respectfully request that this Honorable Court award Plaintiffs' litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

150. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

151. Defendants performed perfunctory and essentially useless reinvestigations

resulting in the verification of false reportings about the Plaintiffs and have been a substantial factor in causing credit denials and other damages.

152. Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

153. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiffs.

154. Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to: out-of-pocket expenses; credit denials; loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs has on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendants to comply with Defendants' statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other

instruments provided by Defendants; loss of self-esteem because of Defendants' continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believes Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendants; attorney's fees; court costs; and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs pray that this Honorable Court:

A. Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Ally Financial, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing Plaintiffs' credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C. Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

D. Order that CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendant, Ally Financial, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer

report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

E. Grant such other and further relief, in law or equity, to which Plaintiffs might show Plaintiffs are justly entitled.

Date Filed: July 22, 2026

Respectfully submitted,

*/s/ Blake R. Bauer*
Blake R. Bauer
MN Bar Number 0396262
*(admitted pro hac vice to the USDC for the EDMI)*
Blake@fieldslaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

***Lead Counsel for Plaintiffs***

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| July 22, 2026 | */s/ Blake R. Bauer* |
| Date | Blake R. Bauer |